J-S14045-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
          Appellee               :
                                          :
      v.                         :
                                          :
RICKEY CHARLES WILSON,         :
                                          :
          Appellant            :       No. 1501 MDA 2016

Appeal from the Judgment of Sentence August 11, 2016
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003807-2014

BEFORE:    GANTMAN, P.J., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY: STRASSBURGER, J.:         **FILED MAY 03, 2017**

Rickey Charles Wilson (Appellant) appeals from the judgment of sentence entered on August 11, 2016, after he was found guilty of involuntary deviate sexual intercourse (IDSI), aggravated indecent assault, indecent assault, endangering the welfare of children, corruption of minors, and indecent exposure.[1] We affirm.

Because we write only for the parties, a full recitation of the factual history is unnecessary. Pertinent to this appeal, Appellant was charged with, *inter alia*, the aforementioned crimes after K.C., then five years old, reported to her grandmother in early July 2014 that she had been touched

---

[1] Appellant was also charged with rape and intimidation of witnesses or victims. The trial court granted Appellant's motion for judgment of acquittal on the charge of rape, and the Commonwealth subsequently withdrew the intimidation charge.

---

*Retired Senior Judge assigned to the Superior Court.

inappropriately by her mother's boyfriend "Rickey," later identified as Appellant.

On May 3, 2016, following a jury trial, Appellant was found guilty of the abovementioned crimes. On August 11, 2016, Appellant received an aggregate sentence of ten years and three months to 48 years' incarceration.[2] This timely-filed appeal followed.[3]

Appellant raises the following issues for our review.

1. Whether the trial court erred in precluding Appellant from introducing character evidence of Appellant's peacefulness where the Commonwealth charged Appellant with an offense defined as a "sexually violent offense[;]" where the Commonwealth during opening statement framed this case as one of "child abuse[;]" and where the Commonwealth introduced into evidence a video interview where [K.C.] alleged that someone pushed her onto a bed, climbed on top of her and made her hurt.

2. Whether the jury's verdict of guilty of IDSI was against the weight of the evidence where [K.C.] was unable in the courtroom to identify the person who touched her[,] where other men had opportunities to abuse K.C.[,] and where Appellant presented credible character evidence of trustworthiness.

3. Whether the trial court's failure to consider the rehabilitative needs of [] Appellant, as indicated by the court's failure to explicitly cite this factor as one that impacted the sentence, represents an abuse of the discretionary aspects of sentencing.

---

[2] Per an order issued by the trial court, Appellant was evaluated by the State Sexual Offenders Assessment Board and found not to be a sexually violent predator.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant's Brief at 12-13 (trial court answers and suggested answers omitted).

We first address Appellant's issue that the trial court erred in disallowing him from presenting character evidence of his propensity of "peacefulness," which he argues is pertinent to the charges against him. Appellant's Brief 25-27. Specifically, concerning the IDSI charge, Appellant avers evidence of his peaceful character is relevant because IDSI is listed as a sexually violent offense under the statute. *Id.* at 27.[4] Furthermore, Appellant argues that the Commonwealth opened the door to this testimony by stating within its opening that this case was one of "child abuse," and its introduction of video testimony, wherein, according to Appellant, K.C. "claims that the person responsible for these crimes threw her onto the bed, got on top of her and rubbed her so hard that it made her vagina hurt." *Id.* at 29-30. Appellant argues that because the foregoing implicates violence, the trial court should have allowed Appellant to introduce this evidence of "peacefulness." *Id.*

---

[4] In his brief, Appellant further claims that his reputation for peacefulness was relevant to the charges of witness intimidation and rape. However Appellant failed to include those allegations in his concise statement. Therefore, they are waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. Poncala*, 915 A.2d 97, 100 (Pa. Super. 2006) ("[A]s a general rule, the failure to raise an issue in an ordered Rule 1925(b) statement results in the waiver of that issue on appeal.").

In determining whether the trial court properly excluded testimony of Appellant's reputation for peacefulness, we are mindful that

> [a]s a general rule, evidence of a person's character may not be admitted to show that individual acted in conformity with that character on a particular occasion. Pa.R.E. 404(a). However, Pennsylvania Rule of Evidence 404(a)(1) provides an exception which allows a criminal defendant to offer evidence of his or her character traits which are pertinent to the crimes charged and allows the Commonwealth to rebut the same. Pa.R.E. 404(a)(1). This Court has further explained the limited purpose for which this evidence can be offered:
>
>> It has long been the law in Pennsylvania that an individual on trial for an offense against the criminal law is permitted to introduce evidence of his good reputation in any respect which has "proper relation to the subject matter" of the charge at issue. Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged. The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

*Commonwealth v. Johnson*, 27 A.3d 244, 247–48 (Pa. Super. 2011) (citations omitted). As with all evidentiary rulings, a trial court's decision to disallow such evidence will not be reversed absent an abuse of discretion. *Commonwealth v. Fisher*, 764 A.2d 82, 86 (Pa. Super. 2000).

Appellant was charged and convicted of, *inter alia*, 18 Pa.C.S. § 3123(b), which provides, "[a] person commits [IDSI] with a child, a felony of the first degree, when the person engages in deviate sexual intercourse

- 4 -

with a complainant who is less than 13 years of age." Thus, the Commonwealth was not required to prove that violence or force was involved in the commission of this crime in order to meet its burden.

Accordingly, the trial court held that Appellant's reputation for peacefulness was irrelevant to the ultimate issue of whether he committed IDSI of a child and as such, "Appellant was not permitted to introduce evidence of his peaceful reputation at trial." Trial Court Opinion, 10/24/2016, at 3.

We begin by reiterating our well-settled law, which states that "evidence of good character offered by a defendant in a criminal prosecution must be limited to his general reputation **for the particular trait or traits of character involved in the commission of the crime charged.**" ***Commonwealth v. Lauro***, 819 A.2d 100, 109 (Pa. Super. 2003) (citing ***Commonwealth v. Luther***, 463 A.2d 1073, 1077 (Pa. Super. 1983)) (emphasis added). Thus, it is of no moment that IDSI is characterized for sentencing purposes and SORNA evaluation as a sexually violent offense. ***See*** 42 Pa.C.S. § 9799.12; 9799.14. For admissible character evidence, a court must consider whether the trait offered is relevant to the crime charged. Here, the Commonwealth needed to prove that penetration "however slight" occurred and that K.C. was under the age of thirteen at the time Appellant committed the offense. Proof of violence or force was

unnecessary. Thus, the trial court was within its discretion to disallow Appellant's proposed character evidence.

On appeal, Appellant also claims that his character for peacefulness was made relevant by the Commonwealth's opening and introduction of K.C.'s video interview, which he avers implicated violence. Appellant did not present these arguments to the trial court and the court had no duty to create arguments on Appellant's behalf. This issue is therefore waived. Moreover, even if we considered this argument, it fails to persuade us that the trial court abused its discretion in excluding the testimony of Appellant's reputation for peacefulness. No relief is due.

Appellant next claims that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

- 6 -

*Commonwealth v. Widmer*, 560 Pa. 308, 321-22, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Appellant's argument that the verdict is against the weight of the evidence is based upon the following: (1) "the Commonwealth presented no DNA, fingerprints, or other evidence identifying Appellant as the man who abused K.C.[;]" (2) K.C. waited "weeks or even months" before reporting the abuse; (3) she was unable to positively identify Appellant at trial; (4) K.C. "and other witnesses admitted there were other men and boys in the [K.C.'s] life who were in a position to abuse her[;]" and (5) Appellant introduced evidence showing his reputation for trustworthiness. Appellant's Brief at 32-33.

We begin by noting that the Commonwealth is not obligated to present physical evidence linking Appellant to the crimes committed against K.C. *See Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) ("This Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict.") (quotation marks and citations omitted).

Furthermore, Appellant's weight claim dismisses the abundance of evidence presented to support K.C.'s testimony that she was abused by Appellant. As aptly summarized by the trial court:

It is clear from the record that the [K.C.] was unable to identify [] Appellant in court during trial. However, she testified that she only knows one "Rickey" and that he was the one who lived with [K.C.] and her mother. [K.C.] testified that when her mother would go to work, "Rickey" would touch her inappropriate parts. She also testified that the "Rickey" she knows is a boy and has black skin and hair. [K.C.] identified the parts of her body on Commonwealth's Exhibit 3, including her vaginal area, as those areas that "Rickey" would touch and indicated that he would touch those areas with his fingers and tongue. [K.C.'s] mother testified and identified the Appellant as the "Rickey" who resided with her and [K.C.] during the time periods when the sexual offenses occurred. [] Appellant was identified by [K.C.'s] mother as the individual who would sometimes remain at home with [K.C.] while she went to work. [Additionally, K.C.'s mother testified at trial that Appellant's appearance had changed since he lived with K.C. and her mother. Specifically, K.C.'s mother stated that Appellant looked older, thinner, and appeared to have thicker hair. K.C.'s] grandmother also testified and identified [] Appellant as the individual who resided with [K.C.] and her mother. Furthermore, [] Appellant admitted to Susan Bamford, an intake worker with the sexual abuse unit of Berks County Children and Youth Services, that he would watch [K.C.] when her mother was at work and that there were times when he was alone with her or in bed with her. Ms. Bamford positively identified [] Appellant as the individual who made these statements to her. Trooper Alyssa Becker of the Pennsylvania State Police also identified Appellant as the individual with whom she discussed the allegations of sexual abuse against [K.C.]. Appellant initially denied the allegations but then stated that [K.C.'s] mother needs to stand by her daughter and that she was not lying. Therefore, although [K.C.] could not identify [] Appellant in court as the person who touched her, the identification of [] Appellant made by the other Commonwealth witnesses provided ample circumstantial evidence to support the jury's finding that it was the Appellant who touched [K.C.].

Trial Court Opinion, 10/24/2016, at 6-7.

Here, the jury had the opportunity to hear all evidence presented and assess the credibility of those who testified. This included evidence of other men who were present in K.C.'s life during the time of the assaults, as well as character evidence presented on Appellant's behalf. It is evident by the jury's verdict that they found that K.C.'s testimony, in conjunction with the additional testimony and evidence presented, supported the finding that Appellant was the man who inappropriately touched K.C. For the foregoing reasons, Appellant has failed to convince us that the trial court abused its discretion in holding that the verdict was not against the weight of the evidence.

Appellant's final issue challenges the discretionary aspects of his sentence.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

- 9 -

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

The record reflects that Appellant timely filed a notice of appeal and that Appellant preserved the issue by timely filing a motion for reconsideration of his sentence. Moreover, Appellant has included in his brief a statement pursuant to Pa.R.A.P 2119(f). We now turn to consider whether Appellant has presented substantial questions for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the

- 10 -

sentencing process." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (citation and quotation marks omitted).

In his 2119(f) statement, Appellant argues the sentencing court

> entirely disregarded the rehabilitative needs of [Appellant] and imposed a sentence which only reflected the gravity of the offense and the protection of the public. [The] transcript from the sentencing indicates that the [sentencing] court fashioned a sentence without first indicating on the record that it had performed its statutory obligation of considering all required factors.

Appellant's Brief at 23. Appellant essentially takes issue with how the trial court weighed the statutory factors, which this Court has previously held does not raise a substantial question. ***See Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014) ("[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question.").

Regardless, even if we were to address the merits of his claim, Appellant would not be entitled to relief. Prior to imposing Appellant's sentence, the trial court stated the following:

> The [c]ourt has reviewed the presentence investigation report [(PSI)]. Obviously [the sentencing judge was the trial judge] in this case. Certainly [the trial court] cannot imagine nor put [itself] in the shoes of the anxiety that this little girl has been put through, the anxiety she must have suffered when her mother would leave and she then knew that [Appellant] was responsible for babysitting her.
>
> [The trial court has] taken into consideration the nature of the offense. [The court has] taken into consideration the age of this victim. [The trial court has] taken into consideration that this was multiple acts over a period of time, and [does not]

- 11 -

believe that anyone could characterize this as being short versus long, that this will forever be long in this victim's mind. [The trial court has taken] into consideration that the victim that has been violated is the most vulnerable human being in our society and that as we [*sic*] as adults are to be here to protect children and to raise children and [the court finds] it very concerning that [Appellant] was able to infiltrate this family and was so quickly able to begin this abuse.

While [the trial court understands Appellant's] counsel's witness that this is not the Rickey they know[,] we all know sitting here that people who do these types of acts on children have the characteristics of being able to manipulate people so that they can get to the victims that they are attempting to get to.

[The trial court finds] that [K.C.] was repeatedly told not to tell anybody, that she was probably scared, and for all those reasons [the trial court imposes the following] sentence. [The trial court takes] into account [Appellant's] counsel's argument that the guidelines have taken into account or have already considered what [K.C.'s] age was. Count 2 does say that she was less than 13 years of age. [The trial court has] taken into consideration he was under supervision. [The court has] taken into consideration that that was a misdemeanor and that his other offenses were from 2001 and 2002 that those were older offenses.

For all the following reasons[, the trial court does believe] that a standard range sentence is appropriate; however, [the trial court believes] that a consecutive sentence is appropriate in that there were multiple acts that were committed on this victim over a several month period of time. [The trial court does] believe that [Appellant] needs to be under supervision for an extended period of time.

N.T., 8/11/2016, at 19-20.

Thus, before sentencing, the court heard the applicable guidelines and recommendations for sentencing. *Id.* at 6-19. The sentencing court then proceeded to provide a summary of what the court considered when

fashioning Appellant's sentence, which included Appellant's requests, as well as the PSI. "Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court 'was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.'" **Griffin**, 65 A.3d at 937 (quoting **Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988)). Despite this information, for the plethora of reasons given, the trial court found that consecutive standard range sentences were appropriate. We discern no abuse of discretion in the court's determination.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 5/3/2017